

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

EAG:WK                              *271 Cadman Plaza East*
F.#2010R00153                       *Brooklyn, New York 11201*

                                    April 10, 2012

**BY HAND DELIVERY & ECF**

The Honorable Kiyo A. Matsumoto
United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

              Re:  United States v. Anthony Calabro
                   Criminal Docket No. 11-30 (KAM)

Dear Judge Matsumoto:

          The government respectfully submits this letter in
anticipation of sentencing in the above-captioned case, which is
scheduled for Thursday, May 2, 2012 at 9:00 a.m.  For the reasons
set forth below, the government respectfully asks the Court to
sentence the defendant to a term of incarceration of 46 months.

I.    Background

          On January 12, 2011, a grand jury in the Eastern
District of New York returned an indictment charging the
defendant and thirty-eight others with a variety of offenses,
including racketeering conspiracy, based on their leadership of,
membership in and association with the Colombo organized crime
family of La Cosa Nostra (the "Colombo family" and "LCN,"
respectively).  (Docket Entry No. 1.)

          In the indictment, the defendant was alleged to be an
associate within the Colombo family, and he was charged in Count
One with racketeering conspiracy, in violation of Title 18,
United States Code, Section 1962(d), including wire fraud
(Racketeering Act ("RA") 3), extortionate extension of
credit/conspiracy (RAs 24A and B) and extortionate collection of
credit/conspiracy (RAs 24C and D).  (Indictment, ¶¶ 16, 23, 24,
69-72.)  In addition, the defendant was charged in separate

substantive counts with the same extortionate extension of credit/conspiracy (Counts 24 and 25) and extortionate collection of credit/conspiracy (Counts 26 and 27).  (Indictment, ¶¶ 214-217.)  In addition, although not charged in the indictment, as an associate of the Colombo family the defendant participated in the murders of Richard Greaves and William "Wild Bill" Cutolo by assisting other Colombo family members and associates in disposing of the bodies of Greaves and Cutolo.  (Presentence Investigation Report ("PSR"), ¶¶ 14-18.)

On July 20, 2011, the defendant pled guilty, pursuant to a plea agreement, to the racketeering conspiracy alleged in Count One of the indictment.  In his plea, the defendant allocuted to his participation in Racketeering Acts 3 and 24, set forth above.  (Docket Entry No. 467; PSR, ¶¶ 1-3.)

II.  Discussion

For the reasons set forth below, the government respectfully submits that the Court should impose a sentence principally of a term of incarceration of 46 months.  This falls at the top end the Guideline range estimated by the government in the defendant's plea agreement.  Such a sentence is sufficient, but not greater than necessary, to comply with the purposes set forth in Title 18, United States Code, Section 3553(a)(2).

A.  Legal Standard

The Sentencing Guidelines are advisory, not mandatory. United States v. Booker, 125 S. Ct. 738, 764-65 (2005).  However, the Supreme Court held in Booker that the sentencing court must consider the Guidelines in formulating an appropriate sentence. Id.  In Gall v. United States, 552 U.S. 38 (2007), the Supreme Court set forth the procedure for sentencing courts to follow in light of Booker:

> [A] district court should begin all
> sentencing proceedings by correctly
> calculating the applicable Guidelines range.
> As a matter of administration and to secure
> nationwide consistency, the Guidelines should
> be the starting point and the initial
> benchmark.

Gall, 552 U.S. at 49 (citation omitted).  Next, a district court should "consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party.  In so doing, [the district court] may not presume that the Guidelines

range is reasonable.  [The district court] must make an individualized assessment based on the facts presented." <u>Id.</u> at 49-50 (citation and footnote omitted).

Under the Guidelines, the Court must consider all relevant conduct whether or not it resulted in a conviction.  <u>See</u> U.S.S.G. § 1B1.3.  Conduct relevant to a racketeering conviction includes all conduct reasonably foreseeable to the defendant in furtherance of the racketeering enterprise.  <u>See</u> <u>United States v. Ruggiero</u>, 100 F.3d 284, 292 (2d Cir. 1996).  Thus, underlying racketeering acts qualify as relevant conduct.  <u>See</u> <u>United States v. Thai</u>, 29 F.3d 785, 820 (2d Cir. 1994).

Moreover, "[i]n determining the sentence to impose within the guideline range, or whether a departure from the guidelines is warranted, the court may consider, without limitation, any information concerning the background, character and conduct of the defendant, unless otherwise prohibited by law." <u>United States v. Watts</u>, 519 U.S. 148, 152 (1997) (citing U.S.S.G. § 1B1.3).  Thus, "[c]onduct that is not formally charged or is not an element of the offense of conviction may enter into the determination of the applicable guideline sentencing range." <u>Id.</u> at 153 (quoting U.S.S.G. § 1B1.3, cmt. background).  "Relying on the entire range of conduct, regardless of the number of counts that are alleged or on which a conviction is obtained, appears to be the most reasonable approach to writing workable guidelines for these offenses." <u>Id.</u> (quoting U.S.S.G. § 1B1.3, cmt. background).

B.   <u>The Government Seeks a 46 Month Sentence</u>

In the plea agreement, the government estimated that the defendant's total offense level, including a two-point reduction for a global disposition pursuant to U.S.S.G. § 5K2.0, was 21.  It further estimated that the defendant fell within criminal history category I.  As a result, the government determined that the defendant's likely advisory Guidelines range of imprisonment was 37 to 46 months.

The Probation Department determined that the defendant's total offense level, including the two-point global disposition reduction, with which the Probation Department does not agree (PSR, ¶ 123), is 28.  (<u>Id.</u>, ¶¶ 37-75.)  The government's estimate and Probation's determination differ because Probation has factored the defendant's participation in the murders of Richard Greaves and William Cutolo into its offense level calculation pursuant to <u>United States v. Ruggiero</u>, <u>supra</u>.  (PSR, ¶¶ 14-18, 39.)  At the time of its calculation, the

government did not contemplate that these murders should properly factor into the Guidelines calculation.

Here, the murders of Richard Greaves and William "Wild Bill" Cutolo constitute relevant conduct in connection with the RICO conspiracy charge to which the defendant pleaded guilty. However, because the government did not charge the defendant with these murders, did not contemplate their inclusion in the Guidelines calculation and has not provided the defendant with "coverage" for them in the plea agreement, the government does not seek a sentence within the Guidelines range calculated by the Probation Department. Nonetheless, the government and Probation have an obligation to provide the Court with full information regarding the defendant's criminal conduct so that the Court can make an informed judgment at sentencing, with respect to both the Court's determination of the applicable Guidelines and its evaluation of the Section 3553(a) factors. The government respectfully suggests that the Court take the defendant's involvement in the murders into account in its evaluation of the 3553(a) factors.

The Probation Department determined that the defendant's Guidelines Criminal History Category is II. Probation's determination is higher than the government's because it assumes the defendant committed the racketeering conspiracy offense to which he pleaded guilty while he was on conditional discharge in connection with a Kings County Criminal Court case ("Kings County Case"), and adds two criminal history points pursuant to U.S.S.G. 4A1.1(d) as a result. (PSR, ¶¶ 77-80.) The defendant argues that the court records obtained by Probation (id., ¶¶ 77-78) are inaccurate, that the defendant was never on a conditional discharge during his participation in the racketeering conspiracy, and he therefore should not be assessed the two criminal history points pursuant to U.S.S.G. 4A1.1(d). (defendant's March 14, 2012 sentencing letter ("Def. Let."), p. 5.) Because the information concerning the Kings County Case has not been provided to Probation (id., ¶¶ 77-78), and thus cannot be verified, the government respectfully submits that the Court apply a Criminal History Category I to the defendant.

   C.   A Sentence at the Top of the Guidelines Range Set Forth
        in the Plea Agreement Is Appropriate In This Case

        Based on the factors set forth in 18 U.S.C. § 3553(a),
a 46 month sentence, which falls at the top of the Guidelines
range set forth in the plea agreement, is appropriate in this
case.

        1.   The Nature and Circumstances of the Offenses

        The Colombo family is a dangerous criminal enterprise
that uses violence, including murder, to further its interests.
(PSR, ¶¶ 7-9.)  The defendant has been convicted of racketeering
conspiracy, including, as racketeering acts, wire fraud,
extortionate extension of credit/conspiracy and extortionate
collection of credit/conspiracy.  These are serious crimes that
warrant a serious punishment.  18 U.S.C. § 3553(a)(1).

        a.   Extortionate Extension/Collection of Credit
             Conspiracy

        In 2008, when the arrests of Dino Calabro and Dino
Saracino placed Colombo family loansharking profits in jeopardy,
the defendant played a part in identifying and locating
Saracino's loanshark customers and others who provided proceeds
to his brother Dino Calabro and his cousin Dino Saracino.  (PSR,
¶¶ 19-20.)  For example, he stood ready to collect money from the
owner of a liquor store who made routine extortion payments to
the Colombo family.  (Id., ¶¶ 21-22.)  As to loanshark
collections to which his brother Dino was "entitled," the
defendant chose to perpetuate his brother's criminal scheme by
routinely collecting them after his brother's imprisonment.
(Id., ¶ 23.)

        b.   Western Union Fraud

        Between 1995 and 2000, the defendant and others
committed wire fraud.  They did so by pretending to be lenders,
and thus tricking unsuspecting persons in need of loans into
providing: (i) personal information such as the persons' names,
addresses, and social security numbers, and (ii) one or more
"initial payments" on a purported loan.  (Id., ¶¶ 24-25.)  Rather
than provide the loans as promised, the defendant and his Colombo
family co-conspirators, who never intended to issue any loans,
instead took the persons' personal information and stole their
"initial payments."  (Id., ¶ 25.)  As a result of this scheme,
they stole nearly $700,000 belonging to others who needed loans.
(Id., ¶ 27.)

2.   <u>The History and Characteristics of the Defendant</u>

The defendant is a long-time associate of the Colombo family. (<u>Id.</u>, ¶ 28.)  He has been employed in good union jobs since approximately 2000, married since 2001, and subsequently became the father of two children from this marriage. (<u>Id.</u>, ¶¶ 88, 107-08.)  The defendant's greed led him to continue to actively participate in criminal business of the Colombo family, despite the risks to his wife and children that he knew this decision entailed (<u>id.</u>, ¶ 88; Def. Let., pp. 6, 8), and despite the fact that the family's average annual income from legitimate sources exceeded $120,000 from 2007 through 2010. (PSR, ¶ 110).

Notably, the defendant's criminal activity has not been limited to economic offenses, such as the above-referenced "advanced loan fee scam," pursuant to which he and others stole hundreds of thousands of dollars from unsuspecting citizens in need of loans. (<u>Id.</u>, ¶¶ 24-26.)  His crimes of conviction also include the loansharking/extortion described above, with its attendant threat of violence.  His background of violence also includes his involvement in two murders, set forth in chilling detail in the PSR. (<u>Id.</u>, ¶¶ 2, 3, 14-26, 28 and 36.)

On a secret recording (<u>id.</u>, ¶ 17), the defendant admitted to participating in the 1999 murder of William "Wild Bill" Cutolo, in which the defendant and others disposed of the body after Cutolo was executed in the basement of the Saracino residence. (<u>Id.</u>, ¶¶ 16-18.)  The defendant also participated in the 1995 murder of Colombo family associate Richard Greaves. (<u>Id.</u>, ¶¶ 14-15.)  The defendant was captured, on a secret recording, admitting to his role.  This admission included the following:

> "You know, whatever.  I kicked him [Greaves' dead body] in the head.  I was like good for you, you mother fucker . . ."

(<u>Id.</u>, ¶ 15.)

The details of defendant's criminal past, and the defendant's own words, directly contradict the characterization of him, in his sentencing letter, as a "gentle and kind man" and "an extraordinary human being" (Def. Let., p. 17).  Indeed, what is most extraordinary about the defendant is his brutality. Similarly, the contention that the defendant's purported "goodness, devotion, commitment to help others, hard work and

compassion rank[] him among the highest persons" (id., p. 18) is
wholly belied by the facts.

*       *       *

In light of the foregoing, the government respectfully
submits that the nature and circumstances of the offenses and the
history and characteristics of the defendant warrant a sentence
principally of 46 months incarceration, the top end of the
advisory Guidelines range set forth in the plea agreement.

>    2.    Reflecting the Seriousness of the Offense,
>          Promoting Respect for the Law and
>          Providing Just Punishment

A sentencing within the advisory Guidelines range is
necessary to reflect the seriousness of the offense, promote
respect for the law and providing just punishment.  18 U.S.C.
§ 3553(a)(2)(A).  As noted above, the defendant's offenses –
conspiring to participate in the affairs of the Colombo family
through (a) wire fraud in connection with a sophisticated scheme
to defraud hundreds of thousands of dollars from unsuspecting
victims seeking loans and (b) conspiring to make extortionate
extensions and collections of credit, i.e., traditional
loansharking – are serious crimes of the sort that are critical
to the success of organized crime families and that merit a
serious punishment.  A sentence less than the top end of the
advisory Guidelines range, as set forth in the plea agreement,
would therefore be insufficient to serve these important
statutory purposes.

>    3.    Affording Deterrence and Protecting the Public

A sentence at the top end of the advisory Guidelines
range is necessary to afford adequate deterrence to criminal
conduct and to protect the public from further crimes of the
defendant.  18 U.S.C. § 3553(a)(2)(B) & (C).

"Under section 3553(a)(2)(B), there are two major
considerations: specific and general deterrence." United States
v. Davis, No. 08-CR-332 (JBW), 2010 WL 1221709, at *2 (E.D.N.Y.
March 29, 2010).  Both considerations support a sentence at the
top of the Guidelines range set forth in the plea agreement.  In
addition to committing RICO conspiracy and corresponding
predicate racketeering crimes, the defendant has been involved in
two murders.  (PSR, ¶¶ 14-18.)  In particular, the PSR provides
the defendant's chilling admission of his involvement in the
murder of Richard Greaves.  (Id.)  These facts indicate that a

serious term of imprisonment is necessary in order to deter the defendant from committing further crimes and to protect the public from his crimes.

In addition, a sentence at the top of the advisory Guidelines range is necessary to deter others who have the choice between leading a law-abiding life or indulging in a life of crime and violence.  As reflected in the PSR and the letters submitted on his behalf, the defendant has been gainfully employed in good union jobs with apparently admiring colleagues; moreover, he has been surrounded by family and friends willing to forgive and support him.  Nonetheless, despite all these advantages, the defendant selfishly chose to violate his obligation to his biological family, who depended on him, in order to pursue a life of crime as a Colombo family associate. In doing so, he placed his personal interests and those of the crime family above all else.  To this day, the defendant refuses to take responsibility for the fact that it was his choices alone that needlessly hurt his family.[1]

The government respectfully submits that a sentence principally of 46 months incarceration, the top end of the advisory Guidelines range set forth in the plea agreement, is necessary to deter people in the defendant's position from committing crimes and, particularly, from getting involved in organized crime in the first instance.

III. Conclusion

In this case, given all of the facts and circumstance discussed above, a sentence below the top of Guidelines range estimated in the plea agreement would not satisfy the statutory

---

[1]     Despite the assertion that "he accepts full responsibility for his actions" (Def. Let., p. 12), the defendant prefers to pass the blame for harming his family onto his brother.  Throughout the course of this case, rather than take responsibility for any consequences to his family that flow from his conviction, the defendant has instead asked: "How could my brother do this to me?  How could I let my brother do this to my family."  (Id.) (Emphasis added.)

purposes of sentencing.  Therefore, and for all of the foregoing reasons, the government respectfully submits that the Court should impose a sentence of 46 months.

                              Respectfully submitted,

                              LORETTA E. LYNCH
                              United States Attorney

                    By:    _____/s/_____
                              Elizabeth A. Geddes
                              Whitman G.S. Knapp
                              Allon Lifshitz
                              Assistant U.S. Attorneys
                              (718) 254-6430/6107/6164

cc:  Clerk of the Court (KAM) (by ECF)
     Jean Marie Graziano, Esq. (by ECF)
     Jill B. Polish, U.S. Probation Officer (by email)